**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

|  |  |
|---|---|
| ALICIA NALEVANKO, | ) ) FILED ELECTRONICALLY |
| *Plaintiff*, | ) ) Civil Action No.  2:24-cv-147 |
| vs. | ) ) |
| THAI FOON RESTAURANT, INC.; THAIFOON, LLC d/b/a THAI FOON RESTAURANT; TEEJAY LI, individually; and AARON CHEN, individually, | ) ) ) ) ) |
| *Defendants*. | ) **TRIAL BY JURY IS DEMANDED** ) |

**COMPLAINT IN CIVIL ACTION**

Plaintiff, Alicia Nalevanko, by and through her undersigned counsel, now files this Complaint in Civil Action against Defendants, Thai Foon Restaurant, Inc.; ThaiFoon, LLC d/b/a Thai Foon Restaurant; Teejay Li; and Aaron Chen, averring as follows:

**PARTIES**

1.      Plaintiff, Alicia Nalevanko, ("Ms. Nalevanko") is an adult individual who resides in Allegheny County, Pittsburgh, Pennsylvania 15205.

2.      Ms. Nalevanko identifies as a gay woman.

3.      Defendant Thai Foon Restaurant, Inc. ("TFRI"), is registered with Pennsylvania's Department of State ("DOS") as a domestic business corporation formed in Pennsylvania, with a registered office located in Allegheny County at 1950 Settlers Ridge Center Drive, Pittsburgh, Pennsylvania 15205.

4.      Defendant ThaiFoon, LLC d/b/a Thai Foon Restaurant ("TFR"), is registered with the DOS as a domestic limited liability company formed in Pennsylvania, with a registered office located in Allegheny County at 1960 Settlers Ridge Center Drive, Pittsburgh, Pennsylvania 15205.

5.      At all times relevant hereto, Defendants TFRI and TFR (collectively referred to as "Thai Foon") jointly owned and/or operated the restaurant "Thai Foon" located in Allegheny County at 1950 Settlers Ridge Center Drive, Pittsburgh, Pennsylvania 15205.

6.      Thai Foon's primary facility (the "Facility") where Ms. Nalevanko worked is located at 1950 Settlers Ridge Center Drive, Pittsburgh, Pennsylvania 15205.

7.      Defendant, Teejay Li, ("Li") is the owner and operator of Thai Foon.  Li is named as a defendant here in his individual capacity pursuant to 43 P.S. § 955(d) of the PHRA.

8.      Upon information and belief, Li resides in Allegheny County, Pennsylvania, and can be contacted at the Facility's address, being an officer of Thai Foon.

9.      Defendant, Aaron Chen, ("Chen") is an individual imbued with supervisory authority within the Thai Foon enterprise in his role as "manager" of the Facility.  Aaron is named as a defendant here in his individual capacity pursuant to 43 P.S. § 955(d) of the PHRA which expressly prohibits "any person" from retaliating against an individual who has opposed discriminatory practices and/or who has "made a charge… under this act [the PHRA]."  43 P.S. § 955(d) of the PHRA.

10.     Upon information and belief, Chen resides in Allegheny County, Pittsburgh, Pennsylvania 15217.

## JURISDICTION AND VENUE

**A.   This Court Possesses Subject Matter Jurisdiction Pursuant to 28 U.S.C. § 1331 and Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367.**

11.   This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1331 ("Federal Question Jurisdiction"), as Ms. Nalevanko is advancing claims under the Fair Labor Standards Act, 29 U.S.C. §§ 201-219 ("FLSA"), and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII") (collectively referred to as "Federal Law Claims").

12.   Ms. Nalevanko is also advancing statutory claims under the Pennsylvania Human Relations Act, 43 P.S. § 951, *et seq.* ("PHRA"), Pennsylvania Minimum Wage Act, 43 P.S. § 333.101, *et seq.* ("MWA"), and Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1 *et seq.* ("WPCL"), as well as a common law claim for breach of contract (referred to as the "State Law Claims").

13.   This Court may exercise supplemental jurisdiction over the State Law Claims pursuant to 28 U.S.C. § 1367(a) as the Federal Law Claims and the State Law Claims share the same nucleus of operative facts.

14.   Further, the operative facts between the Federal Law Claims and the State Law Claims mirror one another to such a degree that they form the "same case or controversy" under Article III § 2 of the United States Constitution which further supports this Court's exercise of supplemental jurisdiction over the State Law Claims.

**B.   The United States District Court for the Western District of Pennsylvania is the Appropriate Venue for this Matter Pursuant to 28 U.S.C. § 1391(b).**

15.   Venue is proper in the United States District Court for the Western District of Pennsylvania (the "Western District"), Pittsburgh Division, given that a substantial part of the events and omissions giving rise to the Federal Law Claims and State Law Claims occurred in

3

Allegheny County, Pennsylvania, which is one of the counties encompassed by the Western District.

16.     This matter is properly before the Pittsburgh Division of the Western District given the conduct complained of herein arose in Allegheny County, Pennsylvania, and conduct arising within Allegheny County is docketed within the Pittsburgh Division of the Western District pursuant to Local Rule 3 (LCvR 3).

**C.      This Court May Exercise Personal Jurisdiction Over Defendants.**

17.     This Court may exercise personal jurisdiction over Defendants pursuant to 42 Pa. C.S. § 5301(a)(2).

18.     This Court also has general jurisdiction over Defendants in accordance with the Due Process Clause of the United States Constitution.

19.     42 Pa. C.S. § 5301(a) provides for jurisdiction over individuals and entities, stating:

> The existence of any of the following relationships between a person and this Commonwealth shall constitute a sufficient basis of jurisdiction to enable the tribunals of this Commonwealth to exercise general personal jurisdiction over such person:
>
>> (1) Individuals.—
>>
>>> (i) Presence in this Commonwealth at the time when process is served.
>>>
>>> (ii)  Domicile in this Commonwealth at the time when process is served.
>>
>> * * *
>>
>> (2) Corporations.—
>>
>>> (i)  Incorporation under or qualification as a foreign corporation under the laws of this Commonwealth.
>>>
>>> (ii)  Consent, to the extent authorized by the consent.
>>>
>>> (iii)  The carrying on of a continuous and systematic part of its general business within this Commonwealth.

4

(3)    Partnerships, limited partnerships, partnership associations, professional associations, unincorporated associations and similar entities.—

(i)  Formation under or qualification as a foreign entity under the laws of this Commonwealth.

(ii)  Consent, to the extent authorized by the consent.

(iii)  The carrying on of a continuous and systematic part of its general business within this Commonwealth.

42 Pa. C.S. § 5301(a).

20.    As set forth above, TFRI is a domestic corporation, incorporated under the laws of the Commonwealth of Pennsylvania.  Therefore, this Court has general jurisdiction over TFRI pursuant to 42 Pa. C.S. § 5301(a)(2), and TFRI may be brought before this Court.

21.    As set forth above, TFR is a domestic limited liability company, formed in the Commonwealth of Pennsylvania.  Therefore, this Court also has general jurisdiction over TFR pursuant to 42 Pa. C.S. § 5301(a)(2), and TFR may be brought before this Court.

22.    As set forth above, Defendants Li and Chen are individuals domiciled in the Commonwealth of Pennsylvania and, therefore, may be brought before this Court pursuant to 42 Pa. C.S. § 5301(a)(1).

**D.    Ms. Nalevanko Has Exhausted Administrative Remedies; Her Federal and State Law Claims Are Properly Before This Court.**

23.    Ms. Nalevanko has satisfied all procedural and administrative prerequisites under 42 U.S.C. § 2000e-5 and 43 P.S. § 959, and now may proceed to bring this action before the Court. Specifically:

(a)    On or about December 15, 2022, Ms. Nalevanko dual filed a charge of discrimination with the Equal Employment Opportunity Commission (the "EEOC") seeking redress for the Federal Law Claims and the State Law Claims at charge number 533-2023-00580

(the "First Charge") and with the Pennsylvania Human Relations Commission (the "PHRC").

(b) On or about May 25, 2023, Ms. Nalevanko dual filed a second charge of discrimination with the EEOC seeking redress for the Federal Law Claims and the State Law Claims at charge number 533-2023-01961 (the "Second Charge") and with the PHRC.

(c) On November 3, 2023, the EEOC issued the Notice of Right to Sue ("RTS Notice") wherein Ms. Nalevanko was afforded ninety days within which to timely file the Federal Law Claims and the State Law Claims. A true and correct copy of the RTS Notice is attached hereto as "**Exhibit A**" and incorporated herein. The instant Complaint is filed within the ninety-day time period.

## FACTUAL BACKGROUND

24. Ms. Nalevanko began her tenure of employment with Thai Foon in 2016 as a server.

25. The employment contract between Ms. Nalevanko and Thai Foon established that Ms. Nalevanko would be compensated at a rate of $5.00 per hour plus earned tips; Thai Foon practices tip pooling to compensate its employees.

**A. Thai Foon's Sexually Hostile Work Environment**

26. Almost immediately upon commencing employment, Ms. Nalevanko was subjected to a hostile work environment perpetrated by Thai Foon's staff, management, and owner.

27. Beginning in 2016, Li engaged in a pattern and practice of harassing Ms. Nalevanko by yelling at her and belittling her for minor errors she made.

28. In addition, Li routinely punished Ms. Nalevanko by taking away her free-of-charge staff meal, an earned benefit for employees of Thai Foon.

29. In 2017, in one act of discriminatory intimidation, Li forcefully kicked open a freezer door where Ms. Nalevanko was standing in the immediate vicinity. As a result, the freezer door violently struck Ms. Nalevanko in the shoulder, causing her excruciating pain.

6

30. Simultaneously, from 2016 through December of 2022, Li exhibited volatile mood swings wherein he aggressively tossed things—such as customer order tickets and money—at Ms. Nalevanko, tortiously assaulting her; further, he aggressively grabbed items out of Ms. Nalevanko's hands and, in doing so, tortiously battered her.

31. Additionally, Li would frequently fire and then, in quick succession, rehire Ms. Nalevanko.

32. Li often apologized to Ms. Nalevanko after his outbursts, but Li's volatile behavior never ceased.

33. Further, from 2016 through December of 2022, Ms. Nalevanko suffered unwelcome sexual harassment from coworkers, which she brought to the attention of Thai Foon's management, including Li.

34. Despite Ms. Nalevanko's reports, neither management nor Li initiated any action to remedy the sexual harassment to which Ms. Nalevanko was being subjected; in fact, management aided and abetted the harassment.

35. The unwelcome comments referred to above included numerous and frequent comments from other Thai Foon employees.

36. Of the perpetrators was an employee named Bertulo (last name unknown at this time), commenting on Ms. Nalevanko's breasts stating, "Whoa, looks like you're leaking," after he noticed a spot on her shirt.[1]

---

[1] The context of Bertulo's statement referred, offensively and in no uncertain terms, to Ms. Nalevanko's chest and *lactation*, which is the physiological process of producing and secreting breast milk, typically occurring in females after childbirth. Notably, Ms. Nalevanko was not pregnant, nursing, nor engaged in any other activity that would invite, solicit, or otherwise justify Bertulo's comment.

37.     Bertulo's comment described above was not a one-off—Bertulo continuously asked Ms. Nalevanko to kiss him and frequently referred to her as "*mi amor*."[2] Such comments were at all times unwelcome, discriminatory, and created a sexually offensive environment, which Ms. Nalevanko was forced to endure.

38.     In addition to Bertulo's verbal harassment, he also frequently assaulted Ms. Nalevanko.  For instance, Bertulo regularly followed Ms. Nalevanko to her car at night after she finished her work shift, at which time he would try to kiss, hug, and solicit rides from her.

39.     Ms. Nalevanko **repeatedly** and politely objected to Bertulo's advancements so as to not upset Bertulo, given that he and other members of Thai Foon's kitchen staff maintained a practice of tampering with Ms. Nalevanko's free staff meal, to the extent that they were inedible.

40.     Bertulo's conduct was well-known to Thai Foon, Thai Foon's management, and Li; however, no remedial efforts were ever exercised against Bertulo to protect Ms. Nalevanko from his unlawful sexual assaults and the sexually hostile work environment.

41.     Another perpetrator was Steven (last name unknown at this time), who was a new server in October of 2022.

42.     Immediately upon hire, Steven began to sexually harass and assault Ms. Nalevanko, including frequently smacking her buttocks, hugging her, groping her, and grinding his clothed genitalia against her[3].

43.     In November of 2022, Thai Foon's Assistant Manager, Sierra, also known as "Mina," (last name unknown at this time), began to contribute to the ongoing sexual harassment.

44.     For example, on or about November 15, 2022, Sierra asked Ms. Nalevanko to participate in an orgy with her.  In turn, Ms. Nalevanko refused.

---

[2]  The English translation is "my love."
[3]  The colloquial term for such act is "dry humping."

45. On or about November 23, 2022, during a telephone conversation between Ms. Nalevanko and Li, in which they were discussing the prevalent workplace harassment at Thai Foon, Li abruptly terminated Ms. Nalevanko.

46. Subsequently, Ms. Nalevanko again reported to Li the fact she had been subjected to sexual harassment during her employment, after which Li rehired her and *thanked* her for the information.

47. On or about December 6, 2022, a new employee, Jasmine, (last name unknown at this time) approached Ms. Nalevanko concerning a meeting regarding sexual harassment in the workplace, but then reached out, groped Ms. Nalevanko's breast, and laughed.

48. On or about December 10, 2022, Sierra asked Ms. Nalevanko if she could "squirt,"[4] referencing a sexual act. Ms. Nalevanko immediately walked away from Sierra in response thereto.

49. Following the subjection to the sexually hostile work environment delineated above, Ms. Nalevanko continued to report sexual harassment to Li as well as to Aaron.

50. In furtherance of reporting and opposing the hostile work environment, Ms. Nalevanko sent a text message to Aaron on December 11, 2022, wherein she wrote that she did not feel safe at the Facility, in reference to the abovementioned sexual harassment and assault.

**B.    Defendants' Unlawful Wage Practices**

51. Furthermore, during Ms. Nalevanko's tenure of employment, Thai Foon and Li paid Ms. Nalevanko in an inconsistent manner, at times up to two weeks later than her scheduled pay day; in so doing, they denied Ms. Nalevanko owed wages.

---

[4] Referring to the expulsion of fluid from a woman's vulva as a result of sexual arousal.

52.     In addition, Li implemented unlawful tipping practices, whereby he would deduct wages from the tip pool for his own benefit, including partaking in the tip share while working in a position that did not qualify for tipped wages.

53.     Employers, managers, and supervisors are prohibited from receiving tips from tip pools; therefore, Li made illegal deductions from Ms. Nalevanko's wages, once again denying her wages.

## C.     Defendants Retaliatorily Terminated Ms. Nalevanko

54.     On or about December 15, 2022, the First Charge was submitted to the EEOC on Ms. Nalevanko's behalf and a copy of the same was personally served upon Thai Foon.

55.     On or about December 16, 2022, Ms. Nalevanko reported to the Facility for her scheduled shift.

56.     Shortly after arriving at the Facility, Ms. Nalevanko noticed Chen was on the telephone and repeatedly looking in her direction.  Upon information and belief, Chen was speaking to Li, wherein Li was directing Chen to engage in the conduct delineated below.

57.     Upon concluding the telephone call, Aaron approached Ms. Nalevanko with a document in hand.  He proceeded to hold it up in front of Ms. Nalevanko and ask, "What is this all about?"

58.     Upon inspection, Ms. Nalevanko realized that the document was the First Charge, and she replied to Aaron, "I think it speaks for itself."  Aaron remained standing in front of Ms. Nalevanko, so she asked, "Are you guys firing me?"

59.     In turn, Aaron—acting under Li's direction, upon information and belief—replied, "Yes, if you don't want to work in a hostile environment, you should leave."  In stating as much, Aaron terminated Ms. Nalevanko in clear and explicit reference to the First Charge.

10

<u>**COUNT I**</u>
**HOSTILE WORK ENVIRONMENT ON THE BASIS OF SEX**
**IN VIOLATION OF TITLE VII AND/OR THE PHRA**
**42 U.S.C. § 2000e, *et seq.*; 43 P.S. § 951, *et seq.***

*Alicia Nalevanko v. Thai Foon Restaurant, Inc., and ThaiFoon, LLC d/b/a Thai Foon Restaurant*

60.     Ms. Nalevanko incorporates the above paragraphs, as if fully set forth at length herein.

61.     "To succeed on a hostile work environment claim, the plaintiff must establish that 1) the employee suffered intentional discrimination because of his/her sex, 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability."  *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 167 (3d Cir. 2013) (internal citations and quotation marks omitted).

**A.     Ms. Nalevanko Suffered Intentional Discrimination Because of Her Sex; the Discrimination was Severe and Pervasive.**

62.     Ms. Nalevanko experienced extensive discrimination and harassment based upon her sex from the commencement of her employment in 2016 through the time of her termination in December of 2022, including but not limited to the following:

> (a)     Bertulo continuously referred to Ms. Nalevanko as "*mi amor*" and attempted to kiss, hug, and solicit car rides from her;
>
> (b)     Bertulo told Ms. Nalevanko, "Whoa, looks like you're leaking," after he noticed a spot on her shirt, referencing her breasts;
>
> (c)     Bertulo and Thai Foon's kitchen staff frequently harassed Ms. Nalevanko by tampering with her free staff meals, making them inedible;
>
> (d)     Steven harassed and assaulted Ms. Nalevanko numerous times by smacking her buttocks, hugging her, groping her, and dry humping her;

11

(e)   Sierra's frequent inappropriate sexual comments and innuendos, including but not limited to, asking Ms. Nalevanko if she could "squirt" and to participate in an orgy with her; and

(f)   Jasmine approached Ms. Nalevanko to discuss a meeting regarding sexual harassment, but then groped Ms. Nalevanko's breast and laughed.

63.    The abovementioned acts and comments were at all times unwelcome and offensive to Ms. Nalevanko.

64.    Given the frequency, ubiquity, and uninvited nature of the sexual conduct, a clear inference arises that Ms. Nalevanko suffered intentional, severe, and pervasive discrimination based on her sex.

**B.    Ms. Nalevanko Was Detrimentally Affected by the Discrimination, and Reasonable Persons in Like Circumstances Would Be Similarly Affected.**

65.    Ms. Nalevanko wholly opposed and objected to the sexual harassment, denying explicit requests and refusing to answer explicit questions from her coworkers.

66.    Understandably upset and distressed by the sexually hostile work environment, Ms. Nalevanko reported the same to Li and Aaron multiple times.

67.    Any reasonable person in like circumstances to Ms. Nalevanko would also be detrimentally affected by the severe and pervasive discrimination.

**C.    *Respondeat Superior* Liability Exists Given Thai Foon's Role and Refusal to Remedy the Hostile Work Environment.**

68.    In cases involving sexual harassment perpetuated by coworkers, *respondeat superior* liability is established where an employer "knew or should have known of the harassment and failed to take prompt and appropriate remedial action." *Galarza v. Best Western Plus - Genetti*

*Hotel & Conf. Ctr.*, 2020 U.S. Dist. LEXIS 191290, *13 (citing *Hutson v. Procer & Gamble Paper Prods. Corp.*, 568 F.3d 100, 104-05 (3d Cir. 2009)).

69.     The Third Circuit has held that an employer is vicariously liable "for an actionable hostile work environment created by a supervisor with immediate (or successively higher) authority over the employee." *Hitchens v. Montgomery Cnty.*, 278 F. App'x 233, 236 (3d Cir. 2008) (citing *Faragher v. City of Boca Raton*, 524 U.S. 775, 807, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998)).

70.     Further, a plaintiff "may demonstrate *respondeat superior* liability by providing evidence that their supervisor subjected them to a 'tangible employment action,' such as discharge, demotion, or undesirable reassignment." *Id.*

71.     Given Ms. Nalevanko's numerous reports, Thai Foon, Thai Foon's management, and Li were well-aware of the sexual harassment and assaults, yet they failed to make any remedial efforts.

72.     At most, on one occasion, Li *thanked* Ms. Nalevanko for reporting the sexual harassment.

73.     Subsequent to the filing of the First Charge, Thai Foon, rather than rectifying the hostile work environment, further sanctioned sexual discrimination and harassment in the workplace by terminating Ms. Nalevanko, in no uncertain terms, because of the First Charge.

74.     Given Thai Foon's knowledge of the hostile work environment, failure to take remedial action, and termination of Ms. Nalevanko's employment, Ms. Nalevanko can readily establish the existence of *respondeat superior* liability.

75.     As a direct and proximate result of Thai Foon's conduct described hereinabove, Ms. Nalevanko has suffered not only tangible economic loss in the form of lost back pay and benefits

13

and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Alicia Nalevanko, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT II**
**RETALIATION**
**IN VIOLATION OF TITLE VII AND/OR THE PHRA**
**42 U.S.C. § 2000e, *et seq.*; 43 P.S. § 951, *et seq.***

*Alicia Nalevanko v. Thai Foon Restaurant, Inc., and ThaiFoon, LLC d/b/a Thai Foon Restaurant*

76. Ms. Nalevanko incorporates the above paragraphs, as if fully set forth at length herein.

77. "To establish a *prima facie* case of retaliation under Title VII, a plaintiff must tender evidence that: (1) she engaged in activity protected by Title VII; (2) the employer took an adverse employment action against her; and (3) there was a causal connection between her participation in the protected activity and the adverse employment action." *Moore v. City of Philadelphia*, 461 F.3d 331, 340-41 (3d Cir. 2006) (internal citation and quotation marks omitted).

**A.    Ms. Nalevanko Engaged in Protected Activity.**

78. On numerous occasions throughout her tenure of employment, Ms. Nalevanko engaged in protected activity when she reported the sexually hostile work environment to Li and Chen.

79. Further, Ms. Nalevanko filed the First Charge on or about December 15, 2022,

80. It is axiomatic that a complaint of discrimination qualifies as a protected activity for the purposes of Title VII and the PHRA.

14

**B.    Thai Foon Took Adverse Employment Action Against Ms. Nalevanko.**

81.    As delineated above, almost immediately following the filing of the First Charge, on or about December 16, 2022, Ms. Nalevanko was terminated by Chen, who, upon information and belief, was acting under Li's direction.

**C.    A Causal Connection Exists Between the Protected Activity and the Adverse Employment Action.**

82.    Given the close temporal proximity that exists between the time the First Charge was filed to the time of Ms. Nalevanko's termination, as well as the fact that Chen was holding a copy of the First Charge and explicitly referenced the same during the conversation wherein he terminated Ms. Nalevanko, it is necessarily inferable that Thai Foon retaliated against Ms. Nalevanko for reporting the sexually hostile work environment.

83.    As a direct and proximate result of Thai Foon's conduct described hereinabove, Ms. Nalevanko has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Alicia Nalevanko, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT III**
**AIDING AND ABETTING**
**IN VIOLATION OF THE PHRA**
**43 P.S. § 951,** *et seq.*
*Alicia Nalevanko v. Teejay Li and Aaron Chen*

84.    Ms. Nalevanko incorporates the above paragraphs, as if fully set forth at length herein.

15

85.    Defendants Li and Chen are individually liable under the PHRA for aiding and abetting the discrimination, harassment, and retaliation against Ms. Nalevanko in violation of 43 P.S. § 955(e).

86.    Section 955(e) of the PHRA "establishes accomplice liability for individuals who aid and abet a violation of the statute by their employer." *Frye v. Robinson Alarm Co.*, No. 97-0603, 1998 U.S. Dist. LEXIS 1331, at *9 (E.D. Pa. Feb. 11, 1998) (citing *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 552 (3d Cir. 1996)).

87.    43 P.S. § 955(e) provides:

> It shall be an unlawful discriminatory practice. . . [f]or any person, employer. . . or employe, to aid, abet, incite, compel or coerce the doing of any act declared by this section to be an unlawful discriminatory practice, or to obstruct or prevent any person from complying with the provisions of this act. . . or to attempt, directly or indirectly, to commit any act declared by this section to be an unlawful discriminatory practice.

88.    Under 43 P.S. § 955(e), a supervisor who fails to stop known acts of discrimination may be held liable under the PHRA for aiding or abetting the discriminatory acts. *Dici v. Commonwealth of Pennsylvania*, 91 F.3d 542, 553 (3d Cir. 1996). *See also, Connors v. Jim Shorkey Family Auto Grp.*, Civil Action No. 17-1003, 2018 U.S. Dist. LEXIS 14484, at *7-8 (W.D. Pa. Jan. 30, 2018) (finding the plaintiff's complaint sufficiently pled liability against a supervisor for aiding and abetting a hostile work environment where the plaintiff shared her concerns with the supervisor numerous times but the supervisor failed to stop the discriminatory acts).

89.    At all times relevant hereto, Li and Chen were Ms. Nalevanko's supervisors while Ms. Nalevanko was employed by Thai Foon.

90.    As set forth above, Ms. Nalevanko reported the sexually hostile work environment to Li and Chen on numerous occasions and they took no action to remedy the environment, including the ongoing sexual harassment and assault of Ms. Nalevanko.

16

91.     Li and Chen are liable under the PHRA as accomplices for aiding and abetting the discrimination, harassment, and retaliation against Ms. Nalevanko.

92.     As a direct and proximate result of Li and Chen's conduct described hereinabove, Ms. Nalevanko has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff, Alicia Nalevanko, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

<u>**COUNT IV**</u>
**FAILURE TO REMIT WAGES**
**IN VIOLATION OF THE FLSA**
**29 U.S.C. § 201,** *et seq.*
*Alicia Nalevanko v. Thai Foon Restaurant, Inc., ThaiFoon, LLC d/b/a*
*Thai Foon Restaurant, and Teejay Li*

93.     Ms. Nalevanko incorporates the above paragraphs, as if fully set forth at length herein.

94.     Prefatorily, the FLSA mandates two minimum rates of pay for time an "employee" spends dedicated to workplace operations for covered "employers" who constitute an "enterprise engaged in commerce."  29 U.S.C. § 206.

95.     An "employee" is defined within 29 U.S.C. § 203(e)(1) which states in relevant part: "Except as provided in paragraphs (2), (3), and (4), the term 'employee' means any individual employed by an employer."

96.     The definition of "employee" is also recognized as "exceedingly broad" to properly effectuate the remedial purposes of the FLSA. *Safarian v. Am. DG Energy Inc.*, 622 F. App'x 149, 151 (3d Cir. 2015) (citing *Martin v. Selker Bros.*, 949 F.2d 1286, 1293 (3d Cir. 1991)).

97.     29 U.S.C. § 203(d) delineates the definition of an employer to include, "any person acting directly or indirectly in the interest of an employer in relation to an employee. . . ."

98.     The FLSA defines "enterprise" as follows:

> "Enterprise" means the related activities performed (either through unified operation or common control) by any person or persons for a common business purpose, and includes all such activities whether performed in one or more establishments or by one or more corporate or other organizational units including departments of an establishment operated through leasing arrangements, but shall not include the related activities performed for such enterprise by an independent contractor.
>
> * * * *

29 U.S.C. § 203(r)(1).

99.     Further, 29 U.S.C. § 203 defines "[e]nterprise engagement in commerce or in the production of goods for commerce" to mean "an enterprise that":

> (i)  has employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> (ii)  is an enterprise whose annual gross volume of sales made or business done is not less than $500,000.

29 U.S.C. § 203(s)(1)(A)(i)-(ii).

100.     In further elaboration of "commerce," the Third Circuit recognized in *Marshall v. Brunner*, 668 F.2d 748, 751 (3d. Cir. 1982), that an employer's use of out-of-state manufactured equipment which the employer transported in-state for its operations was sufficient to find the employer was an "enterprise engaged in commerce" pursuant to the FLSA.

18

101.     The term "commerce" is specifically defined to include activities such as, "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof."  29 U.S.C. § 203(b).

102.     Relevant here, the FLSA establishes the following wage requirements for tipped employees:

> In determining the wage an employer is required to pay a tipped employee, the amount paid such employee by the employee's employer shall be an amount equal to—
>
> > (i) the cash wage paid such employee which for purposes of such determination shall be not less than the cash wage required to be paid such an employee; and
> >
> > (ii) an additional amount on account of the tips received by such employee which amount is equal to the difference between the wage specified in clause (i) and the wage in effect under section 6(a)(1) [29 U.S.C. § 206(a)(1)].

29 U.S.C. § 203(m)(2)(A)(i)-(ii).

**A.      Defendants Are Employers Under the FLSA.**

103.     Defendants Thai Foon and Li also possessed ultimate authority and control over Ms. Nalevanko and instructed Ms. Nalevanko to perform certain tasks for their financial benefit.

104.     At all times relevant hereto, Defendants exercised a position of power and authority over Ms. Nalevanko begetting that of an "employer" role in the relationship.

105.     At all times pertinent hereto, Defendants also controlled the general terms and conditions of Ms. Nalevanko's workplace duties, dictated the compensation structure and scheme, and mandated the wage keeping practices that Ms. Nalevanko was subjected to as a condition of employment.

106.    As a restaurant responsible for the acts of its employees and/or agents acting withing the scope of their authority, Defendants TFRI and TFR "permitted" Ms. Nalevanko to work and thus "employed" Ms. Nalevanko per 29 U.S.C. § 203(g).

107.    Further, as the owner and operator of Thai Foon, Defendant Li is also an employer under the FLSA.  *See* 29 U.S.C. § 203(d).

108.    Furthermore, given Thai Foon and Li's statuses as employers, they were mandated to comply with the minimum wage, overtime rate of pay, and record keeping requirements of the FLSA pursuant to 29 U.S.C. §§ 206, 207, and 211.

**B.    Thai Foon is An Enterprise Engaged in Commerce.**

109.    Upon information and belief, Thai Foon purchased materials, supplies, and equipment necessary and integral for its business operations to and from out-of-state vendors for the express purpose of utilizing said materials, supplies, and equipment for its business operations within the Commonwealth of Pennsylvania.

110.    Additionally, as part of its routine business practices, Thai Foon transmitted and received payments and credits from out-of-state vendors by and through the use of the internet and/or digital payment processing services that traverse state lines.

111.    Therefore, Thai Foon regularly engages in "commerce" sufficient to satisfy the first prong of 29 U.S.C. § 203(s)(1)(A)(i).

112.    Upon information and belief, Thai Foon has an annual dollar volume of sales in excess of $500,000.00 given the nature, size, scope, industry, and frequency of services that it has effectuated throughout Pennsylvania.

113.    Therefore, Thai Foon satisfies the second prong of 29 U.S.C. § 206(s)(1)(A)(i).

20

114. Accordingly, Thai Foon is an "enterprise engaged in commerce" within the purview of 29 U.S.C. § 206(s)(1).

**C. Ms. Nalevanko Was a Tipped Employee.**

115. Generally, "[t]he FLSA requires employees be paid a minimum wage of $7.25 per hour"; however, there is an exception for tipped employees. *Whited v. New Café at Greystone Gardens*, No. 3:18-1811, 2020 U.S. Dist. LEXIS 45715, at *7 (M.D. Pa. Mar. 17, 2020) (citing 29 U.S.C. §206(a)(1)(C)).

116. A "tipped employe[e]" is defined under 29 U.S.C. § 203(t) as, "any employee engaged in an occupation in which he customarily and regularly receives more than $30 a month in tips." *See also, Whited*, 2020 U.S. Dist. LEXIS 45715, at *7 (describing tipped employees under 29 U.S.C. § 203(t)).

117. As set forth above, per the employment contract, Ms. Nalevanko was compensated at a rate of $5.00 per hour plus earned tips.

118. Throughout her employment, Ms. Nalevanko routinely received more than $30.00 per month in tips to supplement her reduced hourly wage of $5.00.

119. Ms. Nalevanko, therefore, was a tipped employee for the purposes of the FLSA.

**D. Defendants Unlawfully Participated in the Tip Pool.**

120. Defendants Thai Foon and Li practice tip pooling to compensate its waitstaff, including servers such as Ms. Nalevanko.

121. Though tip pooling for employees is generally permissible under the FLSA, "[a]n employer is prohibited from participating in a tip pool." *Whited*, 2020 U.S. Dist. LEXIS 45715, at *8 (citing *Chu Chung v. New Silver Palace Rest., Inc.*, 246 F. Supp.2d 220, 230 (S.D.N.Y. 2002)).

122.    "An employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit." *Fiumano v. Metro Diner Mgmt. LLC*, No. 17-465, 2023 U.S. Dist. LEXIS 20094, at *8-9 (E.D. Pa. Feb. 7, 2023) (internal citation omitted).

123.    Defendants Thai Foon and Li, as employers and/or managers or supervisors, unlawfully paid to themselves wages from the tip pool, whereby Li would deduct wages from the employees' share of the tip pool (commonly referred to as "tip share") to add to his own compensation, which resulted in overall less tipped wages paid to the tipped employees.

124.    Therefore, Defendants Thai Foon and Li denied wages due and owing to Ms. Nalevanko by making illegal deductions from the tip share, which resulted in overall less tipped wages paid to Ms. Nalevanko.

125.    In doing so, Thai Foon and Li failed to remit owed wages to Ms. Nalevanko in violation of the FLSA.

126.    As a direct and proximate result of Defendants' conduct described hereinabove, Ms. Nalevanko has suffered not only tangible economic loss in the form of lost back pay and benefits and lost front pay and benefits, but also substantial emotional and physical distress, embarrassment and humiliation, pain and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses she suffered and will continue to suffer.

WHEREFORE, Plaintiff, Alicia Nalevanko, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT V**
**FAILURE TO REMIT WAGES**
**IN VIOLATION OF THE MWA**
**43 P.S. § 333.101,** *et seq***.**
*Alicia Nalevanko v. Thai Foon Restaurant, Inc., ThaiFoon, LLC d/b/a*
*Thai Foon Restaurant, and Teejay Li*

127.    Ms. Nalevanko incorporates the above paragraphs, as if fully set forth at length herein.

128.    The MWA sets minimum wage requirements for employees in Pennsylvania.

129.    A "tipped employee" works in an occupation that 'customarily and regularly' receives tips and receives at least $135.00 per month in tipped wages.  34 Pa. Code § 231.1(b).

130.    The MWA provides a calculation to determine the wages for tipped employees as follows:

> In determining the hourly wage an employer is required to pay a tipped employe, the amount paid such employe by his or her employer shall be an amount equal to: (i) the cash wage paid the employe which for the purposes of the determination shall be not less than the cash wage required to be paid the employe on the date immediately prior to the effective date of this subparagraph; and (ii) an additional amount on account of the tips received by the employe which is equal to the difference between the wage specified in subparagraph (i) and the wage in effect under section 4 of this act.
>
> * * * *

43 P.S. § 333.103(d).

131.    If the employee qualifies as a "tipped employee," then the minimum hourly rate is reduced to $2.83 per hour.  34 Pa. Code § 231.101a.

**A.    Defendants are an "Employer" Under the MWA.**

132.    The MWA defines "employer" to include "any individual, partnership, association, corporation, business trust, or any person or group of persons acting, directly or indirectly, in the interest of an employer in relation to any employe."  43 P.S. § 333.103(g).

23

133.    In that the MWA's definition of "employer" is nearly identical to the FLSA, the analysis is the same under the MWA as under the FLSA.  *See Schneider v. IT Factor Prods.*, CIVIL ACTION NO. 13-5970, 2013 U.S. Dist. LEXIS 173583, at \*13 (E.D. Pa. Dec. 10, 2013) (citing *Scholly v. JMK Plastering, Inc.*, No. CIVIL ACTION NO. 07-cv-4998, 2008 U.S. Dist. LEXIS 49958, at \*6-7 (E.D. Pa. June 25, 2008)).

134.    As previously averred, and for the same reasons Defendants are an "employer" for purposes of the FLSA, Defendants are also an "employer" for purposes of the MWA.

**B.    Ms. Nalevanko Was An "Employee" Under the MWA.**

135.    The MWA defines "employe[e]" to include "any individual employed by an employer." 43 P.S. § 333.103(h).

136.    In line with its FLSA counterpart, the definition of "employ" is broadly defined as to "suffer or permit to work." 43 P.S. § 333.103(f).

137.    Ms. Nalevanko was employed by Defendants who are employers, and therefore, she is an "employee" under the MWA.

138.    Further, in determining whether an individual is an employee within the MWA, the Commonwealth Court has held the "economic reality test" utilized within the framework of the FLSA is the applicable standard for making such a determination under the MWA. *Commonwealth v. Stuber*, 822 A.2d 870, 873 (Pa. Cmwlth. 2003).

139.    Because Ms. Nalevanko is an "employee" for purposes of the FLSA, she is also an "employee" for purposes of the MWA.

**C.    Defendants are Liable for Violation of the MWA.**

140.    Consequently, given Defendants' status as an "employer" and Ms. Nalevanko's status as an "employee," Defendants were obligated to comply with the wage requirements of the

24

MWA.

141.     By partaking in the tip pool and taking portions of the tip share, Li and Thai Foon failed to pay Ms. Nalevanko the full amount of wages owed to her in violation of 43 P.S. § 333.104(c).

142.     In addition, the MWA provides for the recovery of attorneys' fees and costs when an employer fails to pay an employee in accordance with 43 P.S. § 333.104(c).

143.     Defendants are liable to Ms. Nalevanko for actual damages (lost wages), liquidated damages, as well as reasonable attorneys' fees, costs, and expenses pursuant to 43 P.S. § 333.113.

144.     As a direct and proximate result of Defendants' conduct described hereinabove, Ms. Nalevanko has suffered tangible economic losses resultant from the deprivation of lawfully owed wages.

WHEREFORE, Plaintiff, Alicia Nalevanko, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

<u>**COUNT VI**</u>
**FAILURE TO REMIT WAGES IN VIOLATION OF THE WPCL**
**43 P.S. § 260.1, *et seq*.**
*Alicia Nalevanko v. Thai Foon Restaurant, Inc., ThaiFoon, LLC d/b/a*
*Thai Foon Restaurant, and Teejay Li*

145.     Ms. Nalevanko incorporates the above paragraphs, as if fully set forth at length herein.

146.     The WPCL provides the employee with a statutory remedy to enforce her rights where an employer breaches its fundamental contractual obligation to pay wages owed to said employee. *See Weldon v. Kraft, Inc.*, 896 F.2d 793, 801 (3d Cir. 1990).

147.     The contract between the employer and the employee governs the determination of the specific wages earned by the employee. *Id.* (citing *Sendi v. NCR Comten, Inc.*, 800 F.2d 1138

25

(3d Cir. 1986)).

148.    This statutory remedy under the WPCL creates both a private cause of action to any employee to whom "any type of wages" are owed and bestows "any court of competent jurisdiction" with the power to maintain such an action.  43 P.S. § 260.9a(b).

149.    To recover under the WPCL, a plaintiff must demonstrate: (1) a contractual entitlement; (2) to compensation from wages; and (3) a failure to pay that compensation." *Braun v. Wal-Mart Stores, Inc.*, 24 A.3d 875, 945 (Pa. Super. 2011) (citations omitted).

150.    Further, absent a formal employment contract, an employee must establish "an implied oral contract between the employee and employer." *Id*.

## A.    Defendants Are Employers and Ms. Nalevanko Was Their Employee.

151.    The WPCL defines an "employer" to include, "every person, firm, partnership, association, corporation, receiver or other officer of a court of this Commonwealth and any agent or officer of any of the above-mentioned classes employing any person in this Commonwealth." 43 P.S. § 260.2a.

152.    Defendant TFRI is a corporation that employs individuals, including Ms. Nalevanko, within the geographic boundaries of the Commonwealth of Pennsylvania and, therefore, is an "employer" under 43 P.S. § 260.2a.

153.    Defendant TFR is a business partnership or association that employs individuals, including Ms. Nalevanko, within the geographic boundaries of the Commonwealth of Pennsylvania and, therefore, is an "employer" under 43 P.S. § 260.2a.

154.    Defendant Li is a person and/or an agent or officer of a corporation or business association, that employs individuals, including Ms. Nalevanko, within the geographic boundaries of the Commonwealth of Pennsylvania and, therefore, is an "employer" under 43 P.S. § 260.2a.

**B.    Ms. Nalevanko and Defendants Engaged in a Contract for Ms. Nalevanko's Employment in Exchange for an Hourly Rate of Pay Plus Tips.**

155.    The WPCL defines "wages" to include all "earnings of an employee." 43 P.S. § 260.2a.

156.    Defendants Thai Foon and Li have not asserted a dispute over the wages due and owing to Ms. Nalevanko and have not provided written notice of conceded or disputed wages associated with Ms. Nalevanko pursuant to 43 P.S. § 260.6.

157.    In or around 2016, Ms. Nalevanko and Defendants Thai Foon and Li agreed, verbally, to enter into an oral employment contract wherein Ms. Nalevanko would perform work for Thai Foon and Li, for which Thai Foon and Li would compensate Ms. Nalevanko at an hourly rate plus tips.

**C.    Ms. Nalevanko Has Accrued Owed Compensation From Defendants in the Form of Wages.**

158.    Ms. Nalevanko has sufficiently accrued "wages" within the purview of 43 P.S. § 260.2a, because she engaged in the performance of workplace duties for Defendants in exchange for compensation in the form of tip share, which represented her earned portion of the tip pool.

**D.    Defendants Have Failed to Remit Ms. Nalevanko Her Owed Tips.**

159.    The WPCL imposes a duty on each employer to pay its employees all wages due and owing on established regular paydays (the "Established Payday Procedure"), which is to be designated in advance by the employer. 43 P.S. § 260.3(a).

160.    From the commencement of PMs. Nalevanko's employment with Defendants Thai Foon and Li, their Established Payday Procedure was the disbursement of hourly wages on a bi-weekly basis, and disbursement of tipped share as it was accrued per shift.

161.    As delineated above, Defendants Thai Foon and Li denied wages due and owing to

Ms. Nalevanko by making illegal deductions from the tip share, which resulted in overall less tipped wages paid to Ms. Nalevanko.

162.    Following the final occurrence of Defendants' Established Payday Procedure after Ms. Nalevanko 's separation, Ms. Nalevanko was entitled to the balance of the accrued disparity between her contracted rate and the rate at which she was actually paid.

163.    Defendants have failed to compensate Ms. Nalevanko the remaining and outstanding wages.

**E.    An Award of Liquidated Damages is Appropriate Given Defendants' Failure to Provide Ms. Nalevanko With Her Outstanding Wages.**

164.    Section 260.9a(b), in conjunction with Section 260.10 of the WPCL permits an employee to institute an action for wages and, further liquidated damages, that are not paid in accordance with the Established Payday Procedure.  These statutory provisions state as follows:

> Actions by an employe, labor organization, or party to whom any type of wages is payable to recover unpaid wages and liquidated damages may be maintained in any court of competent jurisdiction, by such labor organization, party to whom any type of wages is payable or any one or more employes for and in behalf of himself or themselves and other employes similarly situated, or such employe or employes may designate an agent or representative to maintain such action or on behalf of all employes similarly situated.  Any such employe, labor organization, party, or his representative shall have the power to settle or adjust his claim for unpaid wages.  43 P.S. §260.9a(b).

> Where wages remain unpaid for thirty days beyond the regularly scheduled payday, or, in the case where no regularly scheduled payday is applicable, for sixty days beyond the filing by the employe of a proper claim or for sixty days beyond the date of the agreement, award or other act making wages payable, or where shortages in the wage payments made exceed five percent (5%) of the gross wages payable on any two regularly scheduled paydays in the same calendar quarter, and no good faith contest or dispute of any wage claim including the good faith assertion of a right of set-off or counter-claim exists accounting for such non-payment, the employe shall be entitled to claim, in addition, as liquidated damages an amount equal to twenty-five percent (25%) of the total amount of wages due, or five hundred dollars ($500), whichever is greater.  43 P.S. § 260.10.

28

165. Per the above statutory provisions, Defendants were legally obligated to provide Ms. Nalevanko with her owed wages when she was not paid those wages for thirty days (30) beyond each regular pay-period according to the Established Payday Procedure.

166. By omission, Defendants refused to pay Ms. Nalevanko all wages due and owing to her well beyond 30 days of the date of the Established Payday Procedure.

167. To date, Defendants have not paid Ms. Nalevanko the above-mentioned wages that are due and owing to her for work performed.

168. As such, Defendants have violated 43 P.S. § 260.10 in failing to pay owed wages to Ms. Nalevanko.

169. Additionally, Defendants have not asserted (and cannot assert) a good faith contest or dispute as to the amount of Ms. Nalevanko's disbursed wages.

170. Defendants' actions described hereinabove were the direct and proximate cause of the violations of Ms. Nalevanko's rights under the WPCL, deprivation of her statutory entitlement to accrued wages, and the total amount of Ms. Nalevanko's damages.

171. Consequently, Ms. Nalevanko is entitled to an award of liquidated damages pursuant to 43 P.S. § 260.10.

**F.     Ms. Nalevanko is Entitled to Reasonable Attorneys' Fees and Costs Incurred in Pursuit of Her Unpaid Wages.**

172. In addition, 43 P.S. § 260.9a(f) mandates that where a plaintiff obtains a favorable judgment, the plaintiff is entitled, as a matter of right, to an award of attorneys' fees:

> The court in any action brought under this section shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow costs for reasonable attorneys' fees of any nature to be paid by the defendant.

43 P.S. § 260.9a(f).

173. As such, Ms. Nalevanko is also entitled to reasonable attorneys' fees pursuant to 43

29

P.S. § 260.9a(f) that were incurred as a result of redressing Defendants' conduct described hereinabove.

174.   As a direct and proximate result of Defendants' conduct described hereinabove, Ms. Nalevanko has suffered tangible economic loss resultant from the deprivation of lawfully owed wages.

WHEREFORE, Plaintiff, Alicia Nalevanko, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

**COUNT VII**
**BREACH OF CONTRACT**
**UNDER PENNSYLVANIA COMMON LAW**
*Alicia Nalevanko v. Thai Foon Restaurant, Inc., ThaiFoon, LLC d/b/a*
*Thai Foon Restaurant, and Teejay Li*

175.   Ms. Nalevanko incorporates the above paragraphs, as if fully set forth at length herein.

176.   To establish an action sounding in breach of contract, a plaintiff must establish, "(1) the existence of a contract, (2) a breach of a duty imposed by the contract, and (3) damages." *Sullivan v. Chartwell Inv. Partners, L.P.*, 873 A.2d 710, 717 (Pa. Super. 2005) (citing *J.F. Walker Co., Inc. v. Excalibur Oil Group, Inc.*, 792 A.2d 1269 (Pa. Super. 2002)).

177.   In a bona fide contractual offer, Defendants verbally extended Ms. Nalevanko the opportunity to exchange her time and efforts, within the context of gainful employment with Defendants, for, amongst other things, a designated rate of hourly pay.

178.   Ms. Nalevanko conveyed her acceptance of Defendants' offer, and the employment contract ("Employment Contract") was formed, at which time Ms. Nalevanko and Defendants became legally bound by the Employment Contract.

179.     Ms. Nalevanko immediately and consistently performed her obligations under the Employment Contract, by completing the workplace duties of her position in the manner required by Defendants.

180.     Defendants immediately performed some of their obligations under the contract, including paying Ms. Nalevanko at a designated reduced regular hourly rate for each workweek.

181.     Defendants, however, failed to perform their obligations, pursuant to the Employment Contract, to pay Ms. Nalevanko the tip share wages due and owing to her, which accrued each time Defendants unlawfully compensated himself by way of the tip share.

182.     By omission, Defendants refused to pay Ms. Nalevanko the requisite wages and therefore breached the Employment Contract.

183.     Defendants' actions described hereinabove were the direct and proximate cause that resulted in a breach of the Employment Contract, deprived Ms. Nalevanko of her entitlement to accrued pay, and resulted in lost wages.

184.     As a direct and proximate result of Defendants' conduct described hereinabove, Ms. Nalevanko has suffered not only tangible economic losses resultant from the deprivation of lawfully owed wages, but also substantial emotional distress, pain, and suffering, and is entitled to compensatory damages for these injuries, in addition to the tangible economic losses he suffered and will continue to suffer.

WHEREFORE, Plaintiff, Alicia Nalevanko, seeks the damages set forth in the *ad damnum* clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

185.    Plaintiff, Alicia Nalevanko, respectfully requests this Honorable Court to enter judgment in her favor, and against Defendants, Thai Foon Restaurant, Inc.; ThaiFoon, LLC, d/b/a Thai Foon Restaurant; Teejay Li; and Aaron Chen, and prays for relief as follows:

(a)    Declare and find that one or more of the following acts were committed:

   (i)    Violated Title VII and/or the PHRA by creating and sustaining a hostile work environment based on sex;

   (ii)    Violated Title VII and/or the PHRA by retaliating against Ms. Nalevanko for reporting sex discrimination;

   (iii)    Violated the FLSA by failing to remit wages;

   (iv)    Defendants acted maliciously and/or with reckless indifference to Ms. Nalevanko's rights under Title VII and/or the PHRA; and

   (v)    Chen and Li intentionally aided and abetted the discrimination, harassment, and retaliation directed at Ms. Nalevanko;

(b)    Award compensatory damages, including but not limited to past and future pecuniary and non-pecuniary losses, including suffering, mental anguish, inconvenience, and loss of enjoyment of life;

(c)    Award equitable relief in the form of back pay and front pay;

(d)    Award liquidated damages;

(e)    Award punitive damages sufficient to deter Defendants from engaging in future conduct of a similar nature;

(f)    Award injunctive and other equitable relief as provided by law;

(g)    Award reasonable attorneys' fees and costs;

      (h)     Award pre-judgment and continuing interest as calculated by the Court; and

      (i)     Award such other and further relief as this Court deems just, equitable, and proper.

**TRIAL BY JURY IS DEMANDED.**

Respectfully submitted,

**THE WORKERS' RIGHTS LAW GROUP, LLP**

Date: February 1, 2024      By:     *s/Lindsay M. Offutt*
      Kyle H. Steenland, Esq. (Pa. I.D. No. 327786)
      Lindsay M. Offutt, Esq. (Pa. I.D. No. 327434)

      The Workers' Rights Law Group, LLP
      Foster Plaza 10
      680 Andersen Drive, Suite 230
      Pittsburgh, PA 15220
      Telephone: 412.910.7810
      Fax: 412.910.7510
      kyle@workersrightslawgroup.com
      lindsay@workersrightslawgroup.com

      *Counsel for Plaintiff, Alicia Nalevanko*